UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ASHLEY NELSON and                                    CIVIL ACTION
DARREL NELSON

VERSUS                                               NO.

UPPER IOWA UNIVERSITY,                               SECTION " "
CYNTHIA BENTLEY, TIFFANY ADAMS,
KATHY FRANKEN and WILLIAM DUFFY

### NOTICE OF REMOVAL [BASED ON FEDERAL QUESTION AND SUPPLEMENTAL JURISDICTION AS WELL AS IMPROPER JOINDER OF THE ONLY LOUISIANA INDIVIDUAL DEFENDANT]

Defendants, Upper Iowa University, Cynthia Bentley, Tiffany Adams, Kathy Franken and

William Duffy, hereby give notice that they are removing this action from the Ninth Judicial District

Court for the Parish of Rapides, State of Louisiana, to the United States District Court for the

Western District of Louisiana, and in support thereof, state the following:

1.

This action was commenced by Plaintiffs' Petition for Damages (Civil Suit No. 264,276-F)

on or about February 19, 2019, wherein Ashley Nelson ("Nelson") and Darrel Nelson are Plaintiffs,

and Upper Iowa University ("UIU"), Tiffany Adams ("Adams"), Cynthia Bentley ("Bentley"),

William Duffy ("Duffy") and Kathy Franken ("Franken") are Defendants.[1]  *See* Exh. 1.

2.

Plaintiffs sent the Petition by fax to UIU dated February 19.[2]  *See* Declaration of Aaron

Wedo (Exh. 2) (showing Petition sent and received on February 20).  Service, in fact, was not

---

[1]      As used herein, the term "Individual Defendants" refers to Tiffany (Adams) Johansen, Cynthia Bentley, Dr. William Duffy and Kathy Franken.

[2]      Plaintiffs represent that sent the Petition was sent by certified mail to UIU and each of the Individual Defendants. That is misleading and not completely true.

1

effected on UIU until February 27.  *See* (Exh. 3).

3.

Plaintiffs allege that they are Louisiana citizens.  *See* Petition on p. 1.

4.

Ms. Nelson alleges that she was employed by UIU.  *See* Petition at ¶ 5.

5.

UIU is a non-profit institution of higher learning.  Its main campus, in Fayette, Iowa, is a traditional university.  UIU has 23 other campuses or facilities.  UIU offers course curricula and related degrees in business, education, liberal arts, mathematics and science.  The School offers on campus classes as well as online options.  The Higher Learning Commission ("HLC") has accredited and is currently the School's accreditor.  *See* Wedo Declaration.

6.

A party may remove an action from state to federal court if the action is one over which the federal court possesses subject matter jurisdiction.  28 U.S.C. §1441(a); *Manguno v. Prudential Property & Casualty Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

7.

The 30-day period for removal under 28 U.S.C. § 1446 runs from the date of receipt of formal service, properly made.  *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 119 S.Ct. 1322, 1328-29 (1999).  Since UIU was at the earliest made informally aware of the Petition on February 20, and regardless of whether such notification amounts to service, removal is at the very least timely.[3]

_____

[3]      The consent of improperly joined defendants is not required for removal.  *See, e.g., Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (requiring consent of improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists).  Out of an abundance of caution and reserving all

## Federal Question Jurisdiction

8.

Ms. Nelson alleges she is the victim of race and gender discrimination, as well as retaliation. *See* Petition at ¶¶ 5 and 5 H).  She also mentions "discrimination."  *See* Petition at ¶ 5 P).  While there is no mention of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, Ms. Nelson asserts entitlement to damages for statutory violations.  Petition at ¶ 22.  Ms. Nelson also seeks punitive damages and attorney fees.  *See* Petition at ¶ 22 and the Prayer.  *See also* Wedo Declaration (attaching Nelson's EEOC Charge, wherein she claims the existence of discrimination on the basis of race and disability as well as retaliation).

9.

Plaintiffs can recover punitive damages under federal law for violation of Title VII where an employment decision is made with malice or reckless disregard of an employee's federally protected rights.  42 U.S.C. §1981a(b)(1); *Henry v. CorpCar Servs. Houston, Ltd.*, 625 F. App'x 607, 614 (5th Cir. 2015).

10.

Title VII authorizes attorney fee awards to prevailing parties. 42 U.S.C. § 2000e-5(k).

11.

Plaintiffs cannot recover punitive damage under Louisiana law.  *See* La. R.S. 23:301, *et seq.* Plaintiffs failed to cite any Louisiana law in their Petition. The facts, circumstances, and claims alleged in the Petition indicate that Plaintiffs assert claims under federal law. Therefore, their employment discrimination and retaliation claims arise under federal law.  *Perry v. Sasol*, 170CV-01578, 2018 WL 2407489 at *2-3 (W.D. La. May 10, 2018); *Caravanas v. Hall*, CIVA991405, 1999

---

rights, the Individual Defendants consent to removal.  *See* Declarations of Tiffany (Adams) Johansen (Exh. 4), Cynthia Bentley (Exh. 5), William Duffy (Exh. 6) and Kathy Franken (Exh. 7).

WL 605491 at *2 (E.D. La. Aug. 10, 1999). While Plaintiffs do not cite to any specific law or label their causes of action, under the "artful pleading doctrine," federal courts must look beyond labels and examine the substance of the complaint to determine if it states a claim which arises under federal law.  *Aquafaith Shipping Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992) (noting that a "court may find that the plaintiff's claims arise under federal law, even though the plaintiff has not characterized them as federal claims."); *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) (refusing to remand after stating that court "should inspect the complaint carefully to determine whether a federal claim is necessarily presented, even if the plaintiff has couched his pleadings exclusively in terms of state law."); *Medina v. Ramsey Steel Company, Inc.*, 238 F.3d 675, 680 (5th Cir. 2001) (denying motion to remand, stating:  "From the face of Medina's well pleaded complaint, it is clear that Medina is not proceeding on the exclusive bases of state law.  Instead, the damages he seeks are authorized only by federal law.").

12.

Title VII authorizes claims to be filed in state or federal court.  *See* 42 U.S.C. § 2000e-5(f)(3); *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823-826 (1990).

13.

The Americans with Disabilities Act ("ADA") authorizes claims for failure to reasonably accommodate a disability.  *See* 42 U.S.C. §12112(b)(5)(A) and §12117(a).

14.

Also, Plaintiff can recover punitive damages for violations of the ADA.  *See* 42 U.S.C. § 1981a.

15.

Ms. Nelson does not expressly mention the ADA , as amended (42 U.S.C. §12101, *et seq*.), in her Petition.  *See* Petition at ¶ 3.  However, she makes numerous references and allegations from

which one can infer that she is complaining about a failure to reasonably accommodate an unspecified disability.  See:

    (a)      Petition at ¶¶ 5 E), F), I), J), K), L), R) and X) (describing requests for help and not receiving acceptable responses).

    (b)      Petition at ¶ 5 R) (alleging development "of a significant medical condition leading to hospitalization").[4]

    (c)      Petition at ¶¶ 7 and 22 (asserting violations of federal and state employment laws and seeking damages for unspecified statutory violations).

---

    [4]      Ms. Nelson alleges "development of a significant medical condition leading to hospitalization."  That is a phrase or term that is not used in either the ADA or the FMLA.

There is a difference between a disability under the ADA and a "serious health condition" under the Family and Medical Leave Act ("FMLA"). *See* 29 C.F.R. § 825.702(b), which in relevant part states:

> ADA's "disability" and FMLA's "serious health condition" are different concepts, and must be analyzed separately. FMLA entitles eligible employees to 12 weeks of leave in any 12-month period due to their own serious health condition, whereas the ADA allows an indeterminate amount of leave, barring undue hardship, as a reasonable accommodation.

A disability under the ADA refers to a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102.  *See also* 42 U.S.C. § 12102(2)(A) ("Major life activities" include, but are not limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.")

A significant health condition under the FMLA means an illness, injury, impairment or physical or mental condition that involves inpatient care or continuing health treatment by a health care provider. 28 C.F.R. § 825.113.

Ms. Nelson represented to the EEOC that she has MS.  *See* Declaration of Ellis B. Murov (Exh. 8).  Defendants had no awareness of Ms. Nelson supposed suffering from MS.  *See* Wedo, Adams and Bentley Declarations.  MS is facially a disability.

She represented to UIU that she was hospitalized for gallbladder surgery and that gallbladder problems run in her family.  *See* Bentley Declaration.  Whether based on the ADA and/or the FMLA, Ms. Nelson is asserting a claim or claims under federal law.

5

(d)    Petition in the Prayer at (5) (seeking punitive damages) and (12) (seeking "[a]ll other relief to which Plaintiff shows himself entitled at law or in equity.").

(e)    Wedo Declaration (she claims a violation of the ADA in her EEOC Charge).

16.

The ADA authorizes suits to be brought in federal or state court. 42 U.S.C. §12117(a), which refers one to, *inter alia*, 42 U.S.C. §2000e-5(f)(3).

17.

Ms. Nelson also refers to being a recipient of Family and Medical Leave Act ("FMLA") leave and being terminated by UIU "almost immediately upon her return to work in retaliation." Petition at ¶ 5 R).[5]

18.

The FMLA prohibits discrimination (retaliation). 29 U.S.C. § 2615(a).

19.

Suits alleging violation of the FMLA can be brought in federal court. *See* 29 U.S.C. §2617(a)(2).

20.

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., requires, *inter alia*, employers to pay overtime "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a).

21.

While Ms. Nelson omits mention of the FLSA, she specifically contends that she was required to work "off the clock" "without proper compensation ..." Petition at ¶ 19. *See also* Petition at ¶ 5 K) ("forced to work extra hours" and "forced to work overtime"); ¶ 21 (seeking

---

[5]    *See also* fn. 4 and accompanying text.

damages for statutory violations); and the prayer at ¶¶ 5 and 12 (seeking back pay and all "other relief to which plaintiff shows herself entitled at law or in equity").[6]

22.

Employees can sue in state or federal court to recover unpaid overtime. 29 U.S.C. §216(b).

23.

Ms. Nelson's gender, race discrimination and retaliation claims under 42 U.S.C. §2000e-2(a) and 2000e-3(a), respectively, as well as her ADA, FMLA and FLSA claims, are, accordingly, removable as there is federal question jurisdiction under 28 U.S.C. §1331. *See Huntsberry v. Willamette Valley Co.*, Civ. Action No. 10-1769, 2012 WL 3744761 (W.D. La. Aug. 27, 2012) (Title VII); *Leaumont v. City of Alexandria*, Civ. Action No. 1:13-CV-02397, 2013 WL 5426013 (W.D. La. Sept. 26, 2013) (ADA); *Conine v. Universal Oil Prod. Co.*, No. Civ. A. 05-2011, 2006 WL 681180 (W.D. La. Mar. 14, 2006) (FMLA); *Ross v. Southwest La. Hosp. Ass'n*, No. 2:12CV1250, 2013 WL 1818331 (W.D. La. Apr. 29, 2013).

**Supplemental Jurisdiction**

24.

28 U.S.C. § 1367 (a) states:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

---

[6] Plaintiffs frequently file "off-the-clock" cases seeking damages pursuant to the FLSA. *See Biggio v. H2O Hair Inc.*, Civ. Action No. 15-6034, 2017 WL 2535683 (E.D. La. June 12, 2017); *Wyre v. St. Helena Parish School Board*, Civ. Action No. 04-82, 2006 WL 8432114 (M.D. La. Aug. 24, 2006).

Nelson, however, cannot recover allegedly unpaid overtime under La. R.S. 23:631, *et seq*. *See Bobby Odom v. Respiratory Care, Inc.*, 754 So.2d 252 (1st Cir. 1990), 98-0263 (La. App. 1 Cir. 2/19/99) (holding that La. R.S. 23:631, *et seq*., did not apply to disputes centered around payment of overtime under the Fair Labor Standards Act). Thus, she has again pled a federal claim

25.

Due to the Court's original federal question jurisdiction over Ms. Nelson's federal race discrimination and retaliation, as well as FLSA and FMLA claims, this Court has Supplemental Jurisdiction over Ms. Nelson as well as her husband's state law claims pursuant to 28 U.S.C. § 1367, because the federal and state law claims are based on a common nucleus of operative facts. *Id.*; *Landry v. Delta Well Surveyors*, C.A No. 96-3805, 1997 WL 191511 at *3 (E.D. La. Apr. 16, 1997); *Davis v. Ciba-Geigy Corp.*, 958 F. Supp. 264, 265 (M.D. La. 1997) (denying plaintiff's motion to remand and finding federal question jurisdiction over Title VII claims and supplemental jurisdiction over state-law discrimination and defamation claims because they were "directly related to the federal claim"); *Rumfola v. Total Petrochemical USA, Inc.*, C.A. No. 10-cv-460, 2012 WL 860405 at *1 n. 1 (M.D. La. Mar. 13, 2012) (finding supplemental jurisdiction over state law retaliation and defamation claims where all claims arose out of a common nucleus of operative facts); *Lozada v. Regal Ware, Inc.*, 564 F.Supp.2d 715, 718 (W.D. Tex. 2008) (holding the existence of supplemental jurisdiction over state law claims of negligence, invasion of privacy, IIED, gross negligence and alleged discrimination claims as those as well as the federal claims had a common nucleus of operative facts).

26.

Claims constitute a single case or controversy when they "derive from a common nucleus of operative fact, such that one would expect them to be tried in a single judicial proceeding." *Hankins v. Yellow Fin Marine Servs., LLC*, C.A. No. 2:2015-cv-2494, 2015 WL 9004447 at *3 (E.D. La. Dec. 16, 2015) (unpublished) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Even a "loose factual connection between the [federal and state] claims is generally sufficient to meet the common-nucleus standard." *Id.*

27.

Supplemental jurisdiction "applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one of which the district courts . . . have original jurisdiction." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 165 (1997).

In addition to the statutory factors in 28 U.S.C. § 1367, a court must consider concerns relating to comity balanced against the purposes of exercising supplemental jurisdiction, *i.e.*, "judicial economy, convenience and fairness to the litigants." *See Woodward v. Andrus*, C.A. No. 2:03-cv-2098, 2010 WL 3704610 at *3 (W.D. La. Sept. 10, 2010), *quoting Gibbs*, 383 U.S. at 726.

28.

Ms. Nelson alleges numerous actions by Defendants on which she bases her federal discrimination, retaliation, failure to accommodate and unpaid overtime claims. *See, e.g.*, Petition at ¶ 3 (wrongful termination), ¶¶ 5 A), C),[7] 5 H) (alleged race and gender discrimination); 5 R) (FMLA); 7 ("violation of state or federal employment laws"); as well as ¶ 19 (FLSA); and the Prayer where she seeks punitive damages which are only available under federal law.  Ms. Nelson also alleges actions that form the bases of both state and federal law claims and, thus, a common nucleus of operative facts.  For example:

(a)     Paragraphs 5-20 and 22 (incorporating all of the allegations in support of statutory violations while seeking loss of benefits, income protection, compensatory and punitive damages) are interrelated.

(b)     Paragraphs 3, 5 H), P) and 8-13, which ultimately do not state a claim under Louisiana law for breach of contract as well as whistleblowing (*see infra* and pp. 18-19), but expressly mention a claim for "failure to ensure equal employment

---

[7]     Ms. Nelson sought Ms. Clark's position after Ms. Clark resigned.  She complained about not being promoted.  *See also* Petition at ¶¶ 5 E) and U), and 19.

opportunity" [as per Title VII of the Civil Rights Act of 1964 and the ADA] (Petition at ¶ 9), thereby further establishing the existence of a common nucleus of operative facts.

(c)     Paragraph 16 claims Defendants are liable for extreme emotional distress and multiple forms of damages based on "conduct described in the pleadings."[8]

(d)     Paragraphs 19 (unpaid overtime) and 5 E) (forced to perform her work and that of others), 5 J) (alleging "forced to perform workload of manager"), and 5 K) (alleging forced to work extra hours") are intertwined.

Furthermore, Ms. Nelson is represented by Deidre Fuller.  Ms. Fuller also represents Janice Miller in  *Janice Miller and Laura Picard v. Upper Iowa University, et al.*, 9th JDC, Parish of Rapides No. 263-660-F ("Miller and Picard Petition").

The *Miller and Picard* Petition and Ms. Nelson's Petition have many identical allegations. More specifically:

| Miller and Picard Petition Paragraphs | Nelson Petition Paragraphs |
|:---:|:---:|
| 15 | 8 |
| 16 | 9 |
| 17 | 10 |
| 18 | 11 |
| 19 | 12 |

---

[8]     There are 24 paragraphs in the Petition before the Prayer.

The Prayer at subparagraphs 5)-10) seeks compensatory damages which include future, mental anguish damages or emotional distress.  *See* 42 U.S.C. § 1981a (allowing recovery of damages for mental anguish and other non-pecuniary losses in Title VII and ADA Actions); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001); *Solomon v. Godwin & Carlton, P.C.*, 898 F.Supp. 415 (N.D. Tex. 1995).

| 21 | 13 |
|----|----|
| 22 | 15 |
| 23 | 16 |
| 24 | 17 |
| 25 | 19 |
| 27 | 20 |

Furthermore, Ms. Bentley, Ms. Miller and Ms. Picard all claim to be victims of employment discrimination, retaliation, assault, breach of contract, defamation, failure to maintain a safe workplace, intentional infliction of emotional distress, unjust enrichment and whistleblowing.

29.

Whether all claims should be tried together or not can be decided later.  But, there should be common discovery and that cannot occur unless this action is consolidated with *Miller and Picard* and then litigated in federal court.  This Court, therefore, should exercise Supplemental Jurisdiction over Plaintiffs' state law claims.

### Diversity Jurisdiction

**In General**

30.

In the event that this Court ultimately decides not to exercise supplemental jurisdiction, it has diversity jurisdiction as well as one can see below.

31.

28 U.S.C. § 1332 states:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –

(1) citizens of different States;

(2) citizens of a State  and citizens of a foreign state, except that the district courts shall not have original jurisdiction under the subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent resident in the United State and are domiciled in the same State.

**Amount in Controversy**

32.

Courts initially examine the state court petition to determine the amount in controversy.

*Manguno v. Prudential Property & Casualty Ins. Co.* 276 F.3d 720, 723 (5th Cir. 2002).

33.

Nelson seeks back pay, loss of benefits,  mental anguish and punitive damages.  *See* Petition at ¶ 22 and under the Prayer at subparagraphs 5) thru 9).

34.

UIU employs over 500 persons.  Wedo Declaration.

35.

Plaintiffs can, therefore, recover up to $300,000 in mental anguish and punitive damages.  42 U.S.C. §1981a(a) and (b).

36.

Ms. Nelson was earning over $30,000 a year and had benefits, such as the opportunity to participate in group health and a 403(b) plan.  *See* Wedo Declaration.

37.

Ms. Nelson not only seeks back and front pay,[9] but also complains about not receiving proper compensation.  Petition at ¶¶ 5 C) and 19.  *See also* Petition at ¶ 20 (higher pay); and Prayer at subsections 5) and 12).  Assuming Ms. Nelson gets a trial date by February 2020, which is unlikely, she would be entitled to over $60,000  in back pay alone.  *See* Wedo Declaration, to which is attached the W-2 of Ms. Nelson.

38.

Ms. Nelson can recover liquidated damages (double the back pay figure) for a willful violation under the FLSA, 29 U.S.C. § 216(b).  Thus, Ms. Nelson could potentially recover additional monies.

39.

Where the petition does not include a specific monetary demand such as herein, the removing party must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *Manguno*, 276 F.3d at 723, *citing De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *Lozano v. Schoellerman*, 2009 WL 211080, 1 (S.D. Tex. 2009).

This requirement is met if (1) it is <u>apparent from the face of the petition that the claims are likely to exceed $75,000</u>; or, alternatively, (2) the defendant sets forth "summary judgment type evidence" of facts in controversy that support a finding of the requisite amount.  *Manguno*, 276 F.3d

---

9       Nelson does not specifically seek front pay.  However, she seeks "future damages" and injunctive relief, as well as other remedies available to her at law.  Petition in the Prayer.

Note that front pay is available when injunctive relief is impractical.  *Kucia v. Southeast Arkansas Community Action Corp.*, 284 F.3d 944, 948-49 (8th Cir. 2002); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 169 (2d Cir. 1998); *Weaver v. Amoco Prod. Co.*, 66 F.3d 85, 88 (5th Cir. 1995); *Squires v. Bonser*, 54 F.3d 168, 173 (3d Cir. 1995), *as amended on rehearing* (May 8, 1995), *as amended on rehearing* (June 22, 1995).

at 723, *citing Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R&H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995).

Furthermore, if a statute provides for attorney fees, such fees are also included in determining the amount in controversy. *Manguno*, 276 F.3d at 723; *Foret v. Southern Farm Bureau Life Ins. Co.,* 918 F.2d 534, 537 (5th Cir. 1990).

40.

Title VII authorizes attorney fee awards to prevailing parties. 42 U.S.C. § 2000e-5(k). *See also* 29 U.S.C. § 2617(3) (authorizing attorney fee awards under FMLA); and 29 U.S.C. § 216(b) (authorizing attorney fee awards under the FLSA). *Id.* Likewise, the Louisiana statute establishing a cause of action for whistleblower retaliation authorizes awards of reasonable attorney fees and court costs to prevailing parties. La. Rev. Stat. 23:967(B).

41.

As one can see from the Petition itself, Plaintiffs make no specific demand, except as set forth in the Petition at ¶ 32 and the Prayer for Relief.  There, they specifically seek back pay, injunctive relief, mental anguish damages, loss of consortium and punitive damages, costs, attorney fees and any other remedy authorized by law.

42.

In sum, whether based on the face of the Petition or otherwise (*see* Wedo Declaration), Ms. Nelson is clearly seeking in excess of $75,000.

**Fraudulent Joinder**

**The Petition and Generally Applicable Principles**

43.

The Petition alleges the following claims:

14

| Claim | Defendants |
|---|---|
| Race, sex and disability discrimination under federal law, including failure to reasonably accommodate [10] | UIU, Adams, Bentley, Franken, Duffy |
| Retaliation under federal law[11] | UIU, Adams, Bentley, Franken, Duffy |
| FMLA discrimination | UIU, Adams, Bentley, Franken, Duffy |
| FLSA – off-the-clock | UIU |
| Whistleblowing | UIU, Adams, Bentley, Franken, Duffy |
| Wrongful termination | UIU, Adams, Bentley, Franken, Duffy |
| Breach of contract | UIU, Adams, Bentley, Franken, Duffy |
| Tortious interference with a contract | UIU |
| Unjust enrichment | UIU, Adams, Bentley, Franken, Duffy |
| Defamation | UIU, Adams, Bentley, Franken, Duffy |
| Invasion of privacy | UIU, Adams, Bentley, Franken, Duffy |
| Failure to maintain safe work environment | UIU, Adams, Bentley, Franken, Duffy |
| Assault | Bentley |
| Intentional infliction of emotional distress | UIU, Adams, Bentley, Franken, Duffy |

44.

A Plaintiff cannot prevent removal by improperly joining a non-diverse defendant. *See, e.g., Anderson v. Georgia Gulf Lake Charles, LLC*, 342 F. App'x 911, 915 (5th Cir. 2009); *Borden v.*

---

[10]     It is not obvious that Ms. Nelson seeks relief under La. R.S. 23:301, *et seq.  But see* Petition at ¶ 7.  If she does, she has not stated a claim against the Individual Defendants under federal or state law for which relief can be granted.  The Individual Defendants are not employers.

[11]     *See*  fn. 10.

*Allstate Ins. Co.*, 589 F.3d 168 (5th Cir. 2009); *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100-01 (5th Cir. 1990).

Courts determine whether non-diverse parties have been improperly joined by examining the claims against the non-diverse parties using a Fed. R. Civ. P. 12(b)(6) standard and/or a summary judgment like proceeding to see whether there is a reasonable possibility under state law that a non-diverse defendant could be liable for the claims asserted against him/her/it.  *Id.  See also Smallwood v. Illinois Central RR Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538(1) (5th Cir. 2004); *Ross v. CitiFinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003).

**The Petition Does Not State a Claim Against One Non-Diverse and Improperly Joined Defendant (Ms. Bentley) and/or the Non-Diverse and Improperly Joined Defendant (Ms. Bentley) Would Summarily Prevail.**

**A.      Plaintiffs' Diversity Credentials.**

45.

The Nelsons assert that they are Rapides Parish residents.  *See* Petition at ¶ 1.

**B.      Defendants' Diversity Credentials.**

46.

UIU is an Iowa corporation.  *See* Petition at p. 1.   This is true.

47.

Plaintiffs, however, assert that Tiffany Adams, William Duffy and Kathy Franken are residents of and domiciled in Rapides Parish.  These allegations are untrue.  *See* (Adams) Johansen, Duffy and Franken Declarations.[12]

---

[12]      *See* Exhs. 4, 5 and 7.  They are Iowa citizens.  Defendants should not have been required to dispel the alleged citizenship of Ms. (Adams) Johansen, Dr. Duffy and Ms. Franken for now a second time.  Miller and Picard Petition (Record Doc. No. 1).

Cynthia Bentley does not reside in Rapides Parish.  *See* Bentley Declaration.  But, she is a Louisiana citizen, who was also improperly joined to defeat diversity.

## C. Conclusory Allegations Cannot Defeat Removal.

48.

Conclusory statements and/or statements of ultimate facts cannot defeat a Fed. R. Civ. P. 12(b)(6) and/or 56  motion (*see, e.g., Ashcraft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009)), and/or a properly supported motion for summary judgment.  *Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 321; 2008 WL 2037265, 3 (5th Cir. 2008); *Barkley v. Dillard Dept. Stores, Inc.*, 277 F. App'x 406, 413; 2008 WL 1924178 (5th Cir. 2008); *Johnson v. Pointe Coupee Parish Police Jury*, 261 F. App'x 668, 671; 2008 WL 64659, 3 (5th Cir. 2008).

49.

Hearsay statements are out-of-court statements offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is not admissible unless federal statutes or court rules provide otherwise. Fed. R. Evid. 802.  Hearsay allegations do not state a claim.  *See Ameen v. Merck & Co.*, 226 F. App'x 363, 371 (5th Cir. 2007) (unpublished) (inadmissible hearsay cannot serve as a basis for remand).

Plaintiffs' allegations regarding out-of-court statements made by other UIU employees (who are not parties), UIU students or any other person (*see* Petition at ¶¶ 5 E), I), O), Q), S), T), U), V), Y) and EE) are inadmissible hearsay and do not preclude removal of this action.

## D. The Individual Defendants Are Not Employers.

### 1. The employer test.

50.

Employers under Title VII are those persons who employ 15 or more people. 42 U.S.C. §2000e(b); *Poche v. Travelers Ins. Cos.*, Civ. Action No. 95-1467, 1995 WL 442050 at *1 n. 1 (E.D.

La. July 25, 1995). Employers under ADEA are those persons who employ 20 or more people. 29 U.S.C. § 630(b).

State employment discrimination and retaliation claims only apply to employers. An employer under Louisiana law is "a person, association, legal or commercial entity ... receiving services from an employee and, in return, giving compensation of any kind to an employee." La. Rev. Stat. 23:302(1).

> **2.     The Petition fails to state a claim against non-employers, such as the Individual Defendants, for employment discrimination, retaliation and whistleblowing, as well as breach of contract.**

51.

Ms. Nelson does not allege that she was employed by one or more of the Individual Defendants, and for good reason.  None of the Individual Defendants employed Miller and/or Picard.  *See* the Adams, Bentley, Duffy and Franken Declarations.

52.

The Individual Defendants do not meet the definition of an employer and cannot be held individually liable for employment discrimination under federal or state law.  Plaintiffs, therefore, fail to state a claim for which relief can be granted for disability, gender and race discrimination as well as retaliation under federal and state law against Ms. Bentley as well as the other Individual Defendants.  *Ackel v. Natl. Commc'ns, Inc.*, 339 F.3d 376, 381 n. 1 (5th Cir. 2003) (holding that "Individuals are not liable under Title VII in either their individual or official capacities."); *Johnson et al. v. Acosta et al.*, Civ. Action No. 10–1756, 2010 WL 4025883 (E.D. La., 2010 Oct. 12, 2010) (holding that "Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers."); *Wright v. Sears Roebuck & Co.*, No. 09-1498, 2010 WL 148173 at *3 (W.D. La. Jan. 12, 2010) (same).

53.

Whistleblowing claims can only be brought against employers.  La. R.S. 23:967.  Plaintiffs, therefore, have not stated a claim for violation of La. R.S. 23:967 for which relief can be granted against Ms. Bentley and the remaining Individual Defendants.  *Sebble v. NAMI New Orleans, Inc.*, Civ. Action No. 17-10387, 2018 WL 929604 at *2 (E.D. La. Feb. 16, 2018) (holding that the definition of "employer" under Louisiana's antidiscrimination law applies to claims brought under Louisiana's Whistleblower Statute).[13]

54.

Nelson does not allege, other than implicitly conclusorily, that she contracted with any of the Individual Defendants.  Petition at ¶¶ 3 and 19.  In fact, Individual Defendants did not contract with her.  *See* Declarations of Adams (Johansen), Bentley, Dr. Duffy and Franken.

Moreover, the fact that the Individual Defendants did not employ Plaintiff should also be dispositive of the breach of contract claim.  *See also* Wedo Declaration reflecting a contract between UIU and Ms. Nelson, not the Individual Defendants.

55.

Plaintiffs, therefore, have not stated a claim for breach of contract for which relief can be granted against Ms. Bentley and the rest of the Individual Defendants.

**E.     Unjust Enrichment.**

56.

Ms. Nelson, after referring to breach of direct and implied contracts to perform in good faith,

---

[13]     In fact, Ms. Nelson does not even state a whistleblower claim against UIU.  *Jackson v. Xavier U. of La.*, ___ F.Supp. ___, 2002 WL 1482756 at p. 6 (E.D. La. 2002) (citing La. R.S. 23:302 in concluding that the whistleblower statute is not applicable to "a private educational ... institution or any nonprofit corporation.").  UIU is at least one if not both. *See* Wedo Declaration. Thus, none of the actual whistleblower and related allegations (Petition at ¶¶ 5 H) and P), and 11-13) state a whistleblower claim against UIU and/or the Individual Defendants.

claims that UIU has been unjustly enriched and seeks damages for same.  Petition at ¶ 19.  Then, she seeks damages from Defendants.

57.

La. Code Civ. art. 2298 states:

A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The five requirements for a showing of unjust enrichment are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to plaintiff. *Minyard v. Curtis Products*, 205 So.2d 422 (La. 1967); *Edmonston v. A-Second Mortgage Co. of Slidell, Inc.,* 289 So.2d 116 (La. 1974); *Baker v. Maclay Properties Co.*, 94-1529 (La. 1/17/95), 648 So.2d 888, 897; La. Civ. Code art. 2298.

In *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 575 (La. 1989), the court held that the existence of a claim on an express or implied contract precludes application of the unjust enrichment theory, because the potential claim constitutes a practical remedy at law available to the purported impoverishee.  *See also Carriere v. Bank of Louisiana,* 95–3058, p. 17 (La. 12/13/96), 702 So.2d 648, 671 (on rehearing) (holding the remedy of unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy").

58.

Ms. Nelson had a contract with UIU.  Pursuant thereto, UIU paid her as a non-exempt employee, plus benefits, such as group health and a 403(b) plan.  *See* Wedo Declaration.

59.

This contract and the allegations in ¶¶ 3 and 19 preclude Nelson's unjust enrichment claim. She, therefore, does not state a claim against Ms. Bentley and the remaining Defendants for unjust enrichment.

**F.    Defamation.**

60.

The elements of a defamation claim are (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault (negligence or greater) on the part of the publisher, and (4) resulting injury. *UHS of New Orleans, Inc. v. American Medical Clinics, Inc.*, Civ. Action No. 98-1441, 1998 WL 832573 at *2 (E.D. La. Nov. 24, 1998) (citing *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 1997)).  *See also Trentecosta v. Beck*, 703 So.2d 552 (La. 1997) (adding the requirement of an absence of privilege).[14]

61.

Ms. Nelson asserts that Ms. Bentley provided false information to her superior in Fayette, Iowa.  Petition at ¶ 5 F).  However, intra-corporate communications do not constitute publication. *Cangelois v. Schwegmann Bros. Giant Supermarkets*, 390 So.2d 196, 198 (La. 1980).

62.

Ms. Nelson accuses all Defendants, including UIU, of "intentional and/or reckless disregard of Plaintiff's concerns of wrongful conduct, increasing hostility, and violence in the workplace

---

[14]    Employers of a former employee have a qualified privilege to provide information to a current or prospective employer of a former employee.  *See* La. R.S. 23:291A.  Plaintiff's Petition at ¶ 15 provided no context for the purported defamatory publications so as to overcome the qualified privilege, if in fact Ms. Nelson's allegation refers to a statement made to a prospective employer.  While her allegations in the Petition at ¶ 5 EE) do refer to a statement made to her new employer, the statement apparently caused no damage.  *See also* discussion of tortious interference with a contract at pp. 26-28, *infra*.

[causing] the malicious publication of false statements to third parties about Plaintiff which resulted in damages and caused harm."  Petition at ¶ 15.

63.

While Ms. Nelson refers to defamation in the Petition at ¶¶ 3 and 5 EE), she does not set forth the purported false and/or defamatory statements that Ms. Bentley and/or the remaining Individual Defendants [supposedly] published to an unidentified third party.  Rather, she alleges only that "disregard of Plaintiff's concerns of wrongful conduct" caused malicious publication of false statements.    Petition at ¶ 15.

64.

One, thus, cannot ascertain whether the alleged communications were in fact defamatory.  A defamatory statement is one that has a tendency to injure the person's reputation, i.e. to expose him to contempt, hatred, ridicule, or obloquy, or which causes him to be avoided or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation. *Martinez v. Soignier*, 570 So.2d 23, 25 (La. Ct. App. 1990).

65.

Furthermore, and putting aside a conclusory allegation of damages in the Petition at ¶ 15, the Petition at ¶ 5 EE) allows one to infer that there were no damages.

66.

In sum, Ms. Nelson's defamation allegations are vague, conclusory and/or intra-corporate in nature.  Because Ms. Nelson fails to state a claim against Bentley, the only non-diverse Defendant, she was improperly or fraudulently joined.

**G.      Invasion of Privacy.**

67.

Ms. Nelson alleges that Defendants invaded her privacy.  More specifically, she alleges

Defendants:

> ... purposefully, intentionally, recklessly and negligently allow[ed] [their] employee
> files and personnel information to be located in a public domain.  Defendants did
> intentionally cause Plaintiff's personal information to be exposed to disgruntled
> students, their family members, and unknown other third parties which has caused
> damage to Plaintiff by causing the invasion into the seclusion and solitude of
> Plaintiff's private life ...

*See* Petition at ¶ 17.

68.

Invasion of privacy in Louisiana refers to four interests: 1) appropriation of individual's

name or likeness for the use or benefit of the defendant; 2) unreasonable intrusion by the defendant

upon the plaintiff's physical solitude or seclusion; 3) publicity that unreasonably places plaintiff in

false light before public; and 4) unreasonable public disclosure of embarrassing private facts. *Frigon*

*v. Universal Pictures, Inc.*, 255 So.3d 591, 599 (La. App. 1 Cir. 6/21/18) (citing *Jaubert v. Crowley*

*Post-Signal, Inc.*, 375 So.2d 1386, 1388 (La. 1979)).

69.

The Petition literally does not state what information was disclosed and when.  Nor does it

claim that Defendants invaded Plaintiffs' privacy.  Rather, Defendants' alleged location of employee

files and personnel information in a public domain somehow caused other persons (students) to

invade the seclusion and solitude of Plaintiffs' private lives.  *See* Petition at ¶ 17.

70.

Ms. Nelson does not allege that Ms. Bentley appropriated her name or likeness or that she placed her in a false light. Further, Ms. Nelson does not claim that Ms. Bentley physically intruded on their seclusion and solitude.

71.

Likewise, Ms. Nelson does not claim that Ms. Bentley publicly disclosed embarrassing private facts about her.  In fact, she does not describe what was purportedly disclosed.

72.

The allegations contained in ¶ 17 are conclusory and vague.  There are no other invasion of privacy allegations in the Petition.

Defendants submit that all information contained in a personnel file is not necessarily confidential.  For example, many employers place acknowledgements of receipt of various policies and pre-hire checklist sheets in personnel files.  Disclosure of these and similar such material is not readily susceptible to placing a person in a false light or causing embarrassment.

73.

To the extent this Court requires more, Defendants question the foundation that Ms. Nelson's "personnel information" was left in a public place by Ms. Nelson or any other Individual Defendant because, for example:

(a)     Ms. Nelson complains that the Individual Defendants seldom came to visit Alexandria. Petition at ¶¶ 5 N) and O).  There were, accordingly, few opportunities for Ms. Bentley, *et al*., to discover and leave out unspecified information.

(b)     Personnel files/data have been electronically maintained in Fayette, Iowa since at least March 4, 2016.  *See* Adams and Wedo Declarations.  *See also* Bentley

Declaration at ¶ 7 (denying that she printed or left out information in Nelson's personnel file).

(c)    Ms. Nelson was the office manager.  If the information was maintained in Alexandria, she does not describe what steps she took to maintain the confidentiality thereof.  Point:  Besides failing to describe in some detail the information, Ms. Nelson does not list the steps she took to secret the private information, thereby signaling its private/confidential nature.  *Gerard v. Parish of Jefferson*, 424 So.2d 440, 446 (La. App. 1982) (invasion of privacy claim for intrusion into seclusion rested on plaintiff's demonstrated objections to intrusion and desire to protect sanctity of privacy); *Millet v. Crump*, 96-369, 687 So.2d 132, 136-37 (La. App. 5 Cir. 12/30/96) (if a person does not treat files as confidential, those files cannot be confidential information).

74.

Furthermore, Defendants cannot help but point out the identical allegations contained in the Miller and Picard Petition at ¶ 24 and Ms. Nelson's Petition at ¶ 17 as well as:

| Miller and Picard Petition Paragraphs | Nelson Petition Paragraphs |
|:---:|:---:|
| 15 | 8 |
| 16 | 9 |
| 17 | 10 |
| 18 | 11 |
| 19 | 12 |
| 21 | 13 |
| 22 | 15 |

| 23 | 16 |
|---|---|
| 24 | 17 |
| 25 | 19 |
| 27 | 20 |

*See also* similarities between Paragraphs 3 of each Petition, Paragraph 20 and 13.

75.

There are other identical allegations that should have been corrected by editing but were not. For example, the attorney for Ms. Miller and Ms. Nelson alleges that Ms. Adams, Dr. Duffy and Ms. Franken are residents of Rapides Parish where they just are not.[15]

76.

Whether the identical or all but identical allegations represent editing errors,[16] the invasion of privacy allegations are at least arguably lacking in plausibility and totally so, if the allegations were just not edited out of a Petition that is largely identical to the *Miller and Picard* Petition.

77.

Accordingly, Plaintiffs have failed to state a claim against at least Ms. Bentley for invasion of privacy.   Her joinder was, accordingly, improper.

**H.      Wrongful (Tortious) Interference with  a Contract.**

78.

Ms. Nelson asserts a claim for wrongful (tortious) interference with a contract.  *See* Petition at ¶¶ 3, 5 EE) and 18.

---

[15]      *See* Adams, Bentley, Dr. Duffy and Franken Declarations.  *See* also fn. 12.

[16]      The attorney for Ms. Miller and Ms. Picard misspelled Mr. Nelson's first name.  *See* Duffy Declaration.  The undersigned normally would not point out such a mistake, but these circumstances are not normal.

79.

Ms. Nelson expressly only names UIU as a Defendant in the Petition at ¶ 18. However, she accuses all Defendants in ¶ 5 EE), but it is not clear whether she intends to couple ¶¶ 5 EE) and 18 together. *See also* ¶ 3 where she does not identify any Defendant.

80.

Assuming *arguendo* that Ms. Nelson's tortious inference claim is based on the allegations contained in both ¶ 5 EE) and ¶ 18, Louisiana recognizes a version of this claim. *See 9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La. 1988); *Cowen v. Steiner*, 689 So.2d 516 (La. App. 3d Cir. 1997). The elements of the claim are:

(i)      The existence of a contract.

(ii)     The corporate officer's knowledge of the contract.

(iii)    The officer's intentional inducement or causation of the corporation to breach the contract or rendition of performance impossible or more difficult.

(iv)     Absence of justification.

(v)      Damages.

81.

However, Nelson does not identify the contract, the parties to the contract and when or how the interference occurred. Nor does she state the nature or specifics of the interference. Moreover, she does not even allege an absence of justification. Furthermore, one can infer that there was an attempt to interfere but no damages actually resulted, given the allegations in ¶¶ 3 and 5 EE). *See also* Bentley Declaration (denying communications with current or prospective employers of Ms. Nelson).

82.

In sum, Ms. Nelson fails to state a tortious interference claim against Ms. Bentley and the other Individual Defendants and UIU as well.

**I.    Wrongful Termination of Employment.**

83.

Ms. Nelson asserts that her employment was wrongfully terminated.  Petition at ¶ 3.

84.

UIU's contract with Nelson was for an indefinite duration.  Therefore, she was an at-will employee.  *See* Wedo Declaration.

85.

La. Code Civ. art. 2747 allows employers to discharge employees "without addressing any reason for so doing."  *See also Quebedeaux v. Dow Chem. Co.*, 2001-2297 (La. 6/21/02), 820 So.2d 542, 545; *Bell v. Touro Infirmary*, 785 So.2d 926, 928 (La. App. 4 Cir. 2001) (rejecting wrongful discharge claim stating "reason for termination need not be accurate, fair or reasonable").

86.

Ms. Nelson, therefore, fails to state a claim for which relief can be granted against Ms. Bentley as well as all other Defendants.

**J.    Failure to Maintain Safe Work Environment.**

87.

Ms. Nelson alleges that all Defendants owed a duty to her to prevent workplace violence and ensure a safe place to work.  *See* Petition at ¶ 8.  She further alleges that Defendants breached that duty by failing to enforce and implement UIU's Workplace Violence Procedure and take preventative measures that caused Ms. Nelson to be intimidated, bullied and subjected to a reasonable belief of receiving harm to her person and property.  *See* Petition at ¶ 9.

28

88.

La. R.S. 23:13, which is part of Louisiana Workers Compensation Act, provides that an **<u>employer</u>** has a duty to exercise reasonable care to protect its employees if the employer knows or should know of a dangerous condition or person on its premises. *See also Carr v. Sanderson Farms, Inc.*, 215 So.3d 437, 441 (La. App. 1 Cir. 2/17/17).

89.

The Louisiana Workers Compensation Act provides an employee's exclusive remedy for work-related injuries[17] and precludes civil liability except for injuries resulting from intentional acts. La. R.S. 23:1032.

90.

A claim under La. R.S. 23:13 is a negligence-based claim. *Horswill v. Louisville Ladder Corp.*, C.A. No. 94-3891, 2995 WL 517125 at *2 n. 1 (E.D. La. Aug. 30, 1995). Therefore, employees may not bring claims for an employer's alleged violation of La. R.S. 23:13, unless exempted by statute from the Workers Compensation Act. *Id.*[18] Ms. Nelson's allegations against UIU regarding failure to provide a safe workplace do not state a claim upon which relief can be granted due to the exclusivity provisions of La. R.S. 23:1032.

91.

La. R.S. 23:1032 similarly precludes civil lawsuits by company employees against a company's executive officers and co-employees for work-related injuries, except intentional tort claims. *Kemp v. CTL Distribution, Inc.*, 440 F. App'x 240, 244 n. 1 (5th Cir. 2011); *Courtney v.*

---

[17]    Ms. Nelson has not filed any claim under the Workers Compensation Act. *See* Wedo Declaration.

[18]    Ms. Nelson's gender and race discrimination as well as retaliation claims are examples. The invasion of privacy allegations and failure to maintain a safe work environment are not. To the extent that Ms. Nelson even states an assault claim below, it is also seemingly barred by Section 1032.

*BASF Wyandotte Corp.*, 385 So.2d 391 (La. App. 1 Cir. 1980).  Ms. Nelson's allegations against Ms. Bentley and the other Individual Defendants regarding a safe workplace, therefore, fail to state a claim given La. R.S. 23:1032.

92.

Because Plaintiffs' allegations against Ms. Bentley and the other Individual Defendants fail to state a claim upon which relief can be granted for failure to maintain a safe workplace, Ms. Bentley – the only non-diverse Defendant – was improperly joined.

**K.      The [Non-Assault] Assault Claim Because the Intentional Tort Allegation is Conclusory.**

93.

Ms. Nelson asserts that Ms. Bentley only is liable to her for assault.  Petition at ¶ 14.  In reality, as one can see below, she is accused of a non-assault assault.[19]

94.

Under Louisiana law, "[a]n assault occurs when an intentional threat of battery, or harmful or offensive contact, places one in reasonable apprehension of receiving an injury." *Gressett v. Southwest Airlines Co.*, 216 F.Supp.3d 743, 750 (E.D. La. 2016) (citing *McVay v. Delchamps, Inc.*, 707 So.2d 90, 93 (La. App. 5 Cir. 1/14/98); *Castiglione v. Galpin*, 325 So.2d 725, 726 (La. App. 4 Cir. 1976); *State in re Cortez*, 319 So.2d 496, 497 (La. App. 4 Cir. 1975).  "The law clearly provides for a colorable assault claim only when the threat is one of physical violence." *Id.*

95.

Ms. Nelson literally does not allege that Bentley intentionally threatened her with physical violence.

---

[19]      Ron Zeigler was President Nixon's press secretary during Watergate.  He was accused of communicating on behalf of President Nixon a non-denial denial in response to allegations against Mr. Nixon at one point.

Rather, Ms. Nelson asserts that Ms. Bentley, while an employee of UIU, somehow caused

her to be assaulted by an unspecified person or persons who are not named as defendants.  *See*

Petition at ¶ 14. Therefore, the Petition does not state a claim for assault against Bentley.

Alternatively, the claim against Ms. Bentley is barred by La. R.S. 23:1032.[20]

**L.     Intentional Infliction of Emotional Distress.**

96.

Ms. Nelson asserts that Defendants are liable for intentional infliction of emotional distress

("IIED").  Petition at ¶ 16 (alleging intentional and outrageous acts "described in this pleading"

caused extreme emotional distress).

97.

The Louisiana Supreme Court has recognized that plaintiffs could establish an IIED claim by

showing the following:

1.     Conduct which is outrageous to such a degree "as to go beyond all possible bounds
       of decency, and to be regarded as atrocious and utterly intolerable in a civilized
       community;"

2.     Severe emotional distress, *i.e.*, "distress ... [which] no reasonable person could be
       expected to endure;"

3.     The severe emotional distress is caused by the outrageous conduct; and

4.     Defendant "desired to inflict severe emotional distress or knew that severe emotional
       distress, as opposed to fright, anxiety or worry, would be certain or substantially
       certain to result from his conduct."

*White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991).

Liability, however, does not extend to mere insults, indignities, threats, annoyances, petty

oppressions or other trivialities. *White*, 585 So.2d 1205, 1209.  Persons must necessarily be expected

---

[20]     To the extent that Nelson asserts a claim for negligent infliction of emotional distress
(Petition at ¶ 3), it is barred here as well.

to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.  *Id.*   Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."  *Id.*

The identity of the alleged inflictors matters, as one can see from the following:

The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. ...  Thus, many of the cases have involved circumstances arising in the workplace. ...  A plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger.  ...

*Id*. at 1209-10.  *See also Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1026 (La. 2000) (stating that IIED in the workplace is a recognizable tort in Louisiana only where there is "a pattern of repeated harassment over a period of time.").[21]

98.

Ms. Nelson does not expressly allege in ¶ 16 (or elsewhere) that Ms. Bentley or any other Defendant engaged in a pattern of deliberate, repeated harassment over a period of time.

99.

Boilerplate allegations, such as those contained in ¶ 16, do not state a claim.  *See Barber v. Marine Drilling Mgmt., Inc.*, C.A. No. 01-1986, 2002 WL 237848 at *9 (E.D. La. Feb. 15, 2002) (dismissing IIED claim where complaint simply set forth boilerplate legal conclusion of IIED and was devoid of any allegations of fact that described outrageous and atrocious conduct by the defendant).

---

[21]        "Conduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous."  *Nicholas*, 1999-2522 (La. 8/31/00), 765 So.2d 1017, 1025.

100.

Ms. Nelson alleges she was harassed by students or other persons who are not named as Defendants in this action.  *See, e.g.*, Petition at ¶¶ 6 E)-G), O), Q)-U), W)-Y), FF)-HH), and ¶ 7.

101.

"Ordinary employment disputes, even those involving discrimination ... will rise to the level of IIED only in the most unusual of cases." *Griffith v. Louisiana*, 808 F. Supp.2d 926, 935 (E.D. La. 2011).

102.

Even if Ms. Nelson's allegations describe retaliatory acts by Ms. Bentley, those acts in and of themselves do not rise to the level of IIED simply because they are retaliatory. *Id.* (throwing checks at plaintiff, accusing her of misplacing checks, accusing her of exceeding her authority, and intentional firing after making a complaint of harassment are not actionable as IIED); *Greenwell v. Raytheon Aerospace, Inc.*, C.A. No. 95-2138, 1996 WL 63093 at *3 (E.D. La. Feb. 13, 1996) (alleged retaliation by demotion and transfer to different military base not sufficient to constitute IIED).

103.

In fact, courts applying Louisiana law routinely dismiss IIED claims alleging actions more specific and severe than those alleged by Plaintiffs in this action. *See, e.g.*, *Washington v. Mother Works, Inc.*, 197 F.Supp.2d 569, 572 (E.D. La. 2002) (repeated racial slurs, ridicule for missing work to care for a mother who was suffering from cancer, differing treatment than other managers, and termination did not rise to a level of extreme and outrageous to state IIED claim); *Smith v. Ouachita Parish Sch. Bd.*, 702 So.2d 727 (La. App. 2 Cir. 9/24/97) (holding that the wrongful demotion and transfer of a teacher within the school system, though causing emotional and psychological distress, did not constitute extreme and outrageous conduct); *Stewart v. Parish of Jefferson*, 668 So.2d 1292

(La. App. 5 Cir. 1/30/96) (holding that IIED was not shown, even though a supervisor maintained two-year's harassment in which he questioned the worker's personal life, increased the workload, and pressured the employee to accept a demotion which ultimately led to the employee's termination); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049 (La. App. 3 Cir. 1992) (holding that even if the employee felt singled out for abuse, a supervisor's eight-month undertaking in which he shouted at an employee, cursed her, called her names (dumb, stupid and fat), commented about the inferiority of women, and falsely accused her of making mistakes did not constitute extreme and outrageous conduct); *Trahan v. Bellsouth Tel., Inc.*, 881 F. Supp. 1080 (W.D. La. 1995) (holding that employers use of a security team to ridicule, tease, and taunt plaintiff for seven and one-half hours questioning was not conduct which was outrageous).

104.

To the extent that this Court requires more to show that Ms. Bentley should and cannot be held liable for IIED:

(a)     Ms. Nelson had problems doing the office manager job.  Ms. Bentley met with her to discuss the problems and what, if anything, UIU (Bentley) could do to help.  Ms. Nelson acknowledged and replied by, among other things, expressing gratitude.  *See* Bentley Declaration and Exh. 2, *in globo*, in particular.

(b)     Ms. Bentley has never told Ms. Nelson to work off the clock.  Rather, Bentley told her to record her time so she could be paid and, to the best of Bentley's knowledge, Nelson did.  *See* Bentley Declaration and Exh. 2, *in globo*, in particular.

(c)     Ms. Bentley encouraged Ms. Nelson to take vacation and not work during FMLA leave.  *See* Bentley Declaration and Exh. 2, *in globo*, in particular.

34

(d)     Ms. Bentley never printed out and left in a public place any of the information in Ashley Nelson's personnel file.  Nor has she printed and placed in a public area any personal information on Ashley Nelson. *See* Bentley Declaration.

(e)     Ms. Bentley never communicated with a prospective or current employer of Ms. Nelson, much less communicated falsehoods to him, her or it. *See* Bentley Declaration.

105.

Because Ms. Nelson's allegations against Ms. Bentley are not sufficient to satisfy the intentional, extreme and outrageous standards, Ms. Nelson has failed to state a claim for IIED on which relief can be granted. Therefore, Bentley, the only non-diverse Defendant, was improperly joined.

**CONCLUSION**

106.

Ms. Nelson's employment discrimination, retaliation, failure to accommodate, FLSA and FMLA claims are clearly federal questions that are removable.

107.

Likewise, this Court has Supplemental Jurisdiction since the facts are so interrelated that they form a common nucleus of operative facts.

Moreover, in order to avoid trying at least portions of this case in state court when the *Miller and Picard* Petition and the Petition herein state numerous identical allegations and so as to at least consolidate discovery, this Court should exercise Supplemental Jurisdiction.

108.

Four of the five Defendants are Iowa residents.

109.

There is diversity jurisdiction given that there is over $75,000 in controversy, and state law claims against Ms. Bentley do not state a claim under Fed. R. Civ. Proc. 12(b)(6) and/or 56.

WHEREFORE, Defendants, Upper Iowa University, Cynthia Bentley, Tiffany Adams, Kathy Franken and William Duffy, pray that said state court action be removed from the Ninth Judicial District Court for the Parish of Rapides, State of Louisiana, to the United States District Court for the Western District of Louisiana, and that henceforth, this action be placed on the docket of this Court for further proceedings as though the action had been originally instituted in this Court.

*/s/ Ellis B. Murov*
ELLIS B. MUROV, T.A. (9839)
ANDREW J. BAER (35638)
DEUTSCH KERRIGAN, L.L.P.
755 Magazine Street
New Orleans  LA  70130
Telephone:  504-581-5141
emurov@deutschkerrigan.com
abaer@deutschkerrigan.com
Attorneys for Defendants, Upper Iowa
University, Cynthia Bentley, Tiffany Adams,
Kathy Franken and William Duffy

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Notice of Removal has been served upon:

> Deirdre Fuller, Esq.
> Fuller Law Firm, LLC
> 602 Murray Street
> Alexandria, Louisiana 71301

through this Court's CM/ECF system, by e-mail, fax, by hand and/or by placing same in the U.S.

Mail, postage prepaid and properly addressed, this 19th day of March, 2019.


        /s/ Ellis B. Murov
ELLIS B. MUROV

37